UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANIA VALENTIN AMARILLO,<br><br>Petitioner,<br><br>v.<br><br>TIMOTHY S. ROBBINS et al.,<br><br>Respondents. | No. 1:25-cv-01623-TLN-JDP<br><br>**ORDER** |

This matter is before the Court on Petitioner Thania Valentin Amarillo's ("Petitioner") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's Motion is GRANTED.

///

///

///

1

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2    Petitioner is an asylum seeker who fled Peru due to her opposition to criminal groups with
3    links to the Peruvian government. (ECF No. 2 at 3.) Petitioner entered the United States on April
4    28, 2024. (*Id.*) She was then detained and taken to the Otay Mesa Immigration Processing
5    Center in San Diego, California. (*Id.*; ECF No. 2-4 at 8.) It was determined Petitioner was a low
6    processing priority and that she had no criminal or prosecutorial history. (ECF No. 2-4 at 8.) On
7    April 29, 2024, Petitioner was placed into removal proceedings and released on her own
8    recognizance provided she comply with various conditions. (ECF No. 2-4 at 10.) Petitioner was
9    also served with a notice to appear before an immigration judge. (ECF No. 2 at 3; ECF No. 2-4 at
10   12.) Petitioner appeared at hearings on December 9, 2024, and April 29, 2025. (ECF No. 2 at 3.)
11   On January 18, 2025, Petitioner filed an asylum application. (*Id.* at 3–4.) Her individual hearing
12   is scheduled for May 26, 2028. (*Id.* at 4.)

13   Since her release, Petitioner formed a relationship with a United States citizen, got
14   engaged and plans to get married in April 2026. (*Id.*) Petitioner also began taking classes at
15   Bakersfield Adult School where she studied English. (*Id.*) Petitioner further states she has
16   complied with all her release conditions — she sends pictures or videos of herself to Intensive
17   Supervision Appearance Program ("ISAP") on a weekly basis and presents herself in person at
18   the ISAP office on a monthly basis. (*Id.*) Petitioner states she was ten minutes late to a video
19   check-in with ISAP, but otherwise, is unaware of any other act or omission that could constitute a
20   violation of her monitoring program. (*Id.*)

21   On October 21, 2025, Petitioner's fiancé dropped her off at the ISAP office for her
22   monthly in-person visit. (*Id.*) Petitioner was arrested by Immigration and Custody Enforcement
23   ("ICE") officers who informed her she had missed an unspecified meeting. (*Id.*) Petitioner asked
24   for more specific information, but the officers refused to provide her any details. (*Id.*) That same
25   day, Petitioner was transferred to the California City Detention Center in California City,
26   California. (*Id.*)

27   On November 24, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.)
28   The same day, Petitioner filed the instant TRO. (ECF No. 2.)

## II. STANDARD OF LAW

For a TRO, courts consider whether Petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

## III. ANALYSIS[1]

### A. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on her due process claim. The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94.

---

[1] The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner notified Respondents via email on November 24, 2025 that she would be filing the motion. (ECF No. 2-6 at 2.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

As for the first step, the Court finds Petitioner has raised serious questions as to whether she has protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). As stated, Petitioner was released on her own recognizance on April 29, 2024. (ECF No. 2-4 at 10.) For eighteen months, she built a life and established a community in Bakersfield, California. (ECF No. 2 at 8.) She got engaged, went to school, and made friends. (*Id.*) Moreover, she complied with all her ISAP check-in requirements. (*Id.*) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in her continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step – what procedures or process is due – the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established her due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner was out of custody for eighteen months, had built a life in Bakersfield, and complied with all her release conditions. Despite that, Petitioner has now been detained for over a month without being afforded a hearing. Accordingly, this factor weighs in

4

1  favor of finding Petitioner's private interest has been impacted by her detention. *See Manzanarez*
2  *v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20,
3  2025) (finding similarly).

4  Second, the risk of erroneous deprivation is considerable given Petitioner has not received
5  any bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive
6  in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the
7  community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at
8  *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted). Petitioner has no criminal
9  history and represents she has attended every requisite check-in as mandated under her ISAP.
10 (ECF No. 2 at 2.) Petitioner claims the only incident she can think of that may have constituted a
11 violation was when she was ten minutes late to a video check-in with ISAP. (*Id.* at 4.) Based on
12 this record, the Court finds there is a serious likelihood Petitioner will be erroneously deprived of
13 her liberty interest.[2] Moreover, without any procedural safeguards to determine whether her
14 detention was justifiable, the probative value of additional procedural safeguards is high.
15 *R.D.T.M.*, 2025 WL 2617255, at *4.

16 Finally, the Government's interest is low, and the effort and cost required to provide
17 Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-
18 TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). As this Court stated recently and
19 Petitioner notes, it would be less of a fiscal and administrative burden for the Government to
20 return Petitioner home to await a determination on her asylum case than to continue to detain her.
21 (ECF No. 2 at 10.)

22 On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due
23 process – a hearing to determine whether her detention was warranted. Accordingly, with respect
24 to her due process claim, Petitioner has shown she is likely to succeed on the merits.
25 ///

---

[2] The Court notes Petitioner spends time discussing how she has worked to support herself and her sister since her release in November 2024. (ECF No. 2 at 9.) Based on the record, the Court assumes these statements were submitted in error and disregards them for purposes of this order.

5

B. <u>Irreparable Harm</u>

Petitioner has also established she will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been detained for over a month and has been separated from her fiancé and community.[3] Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

C. <u>Balance of Equities and Public Interest</u>

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). Petitioner argues there is no equitable reason that would tip the balance in the Government's favor, because the Government faces no hardship.[4] (ECF No. 2 at 12.) The Court agrees with Petitioner. First, it is clear on this record that the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14,

---

[3] The Court notes Petitioner's reference to her "sister" and use of the pronoun "he." Again, the Court disregards these references given contextual clues, but Petitioner is directed to clarify such statements in future briefing.

[4] Once again, Petitioner appears to present erroneous facts in the motion by stating Petitioner previously resided in San Mateo County, California. (ECF No. 2 at 12.) While the Court expresses concern over such draftsmanship, it ultimately does not impact the outcome. Given the facts can be discerned from the supporting documents submitted by Petitioner's fiancé under penalty of perjury, the Court once again disregards this statement.

2025) (internal citation omitted).

In sum, these last two factors also weigh in Petitioner's favor. Therefore, the Court GRANTS Petitioner's Motion for a TRO. (ECF No. 2.)

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) is GRANTED;
2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);
3. Petitioner Thania Valentin Amarillo shall be released immediately from Respondents' custody;
4. Respondents are enjoined and restrained from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a hearing before a neutral decisionmaker;
5. **Respondents are ordered to show cause why this Court should not convert this temporary restraining order into a preliminary injunction requiring Respondents to continue to abide by this Court's order. Respondents shall file responsive papers by **Monday, December 1, 2025, by 5 p.m.** Petitioner may file a reply, if any, by **Wednesday, December 4, 2025, by 12 p.m.** If the parties agree upon a less demanding briefing schedule, the Court will consider the parties' proposal. The parties shall indicate in their briefing whether they request a hearing. Fed. R. Civ. P. 65(b)(3);
6. **Petitioner is ordered to serve this Temporary Restraining Order and Order to Show Cause and all supporting pleadings and papers on **Respondents by 8:00 p.m. on November 24, 2025**. Petitioner shall file proof of such service no later than **9:00 a.m. on November 25, 2025.**
7. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice or such shorter notice as the Court may allow. Fed. R. Civ. P. 65(b)(4).

7

1   IT IS SO ORDERED.

2   Date: November 24, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE