UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANIA VALENTIN AMARILLO, | Case No. 1:25-cv-1623-JDP |
| Petitioner, | |
| v. | ORDER |
| TIMOTHY S. ROBBINS, *et al.*, | |
| Respondents. | |

Thania Valentin Amarillo, an immigration detainee represented by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241.[1] ECF No. 1. Petitioner argues that her re-detention without a hearing violates the Fifth Amendment. She also filed a motion for a temporary restraining order. ECF No. 2. The court granted that motion and ordered petitioner's immediate release. ECF No. 4.[2]

In granting petitioner's emergency motion, the court found that she had established a likelihood of success on the merits of her due process claim. *Id.* at 3. Specifically, the court found that petitioner had raised serious questions as to whether she has a protected liberty interest in her continued release and whether she was entitled to an appropriate hearing prior to re-arrest.

---

[1] All parties consented to magistrate judge jurisdiction, and the matter was reassigned to the undersigned on December 11, 2025. ECF No. 10.

[2] Petitioner was released from custody shortly after the temporary restraining order issued. ECF No. 9.

1

*Id.* at 4-5.  In addition to granting petitioner's immediate release, the court enjoined respondents from re-arresting or re-detaining her absent compliance with constitutional protections, including notice and a hearing before a neutral decisionmaker.  *Id.* at 7.  The court set a briefing schedule for the petition, ECF No. 11, and the matter is now fully briefed.

Petitioner argues in her petition that respondents violated her due process rights by re-detaining her without notice and a hearing.  ECF No. 1.  Notably, the government has offered no response to petitioner's due process claim.  Instead, respondents advance an argument premised on an assertion that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and was re-detained under 8 U.S.C. § 1225(b)(2)(A).  ECF No. 12 at 3.  On a fundamental level, the government fails to address how its statutory argument responds to petitioner's constitutional rights-based argument.  Petitioner's argument is, thus, essentially unopposed.  Despite this, the court will address the merits of petitioner's claim.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  The court considers each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  *Morrissey*, 408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a

prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, this court and other courts in this Circuit have found that non-citizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Lopez v. Lyons*, No. 2:25-cv-3174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *De Vasquez v. Chestnut*, No. 1:25-cv-1999-JDP, 2026 WL 25539 (E.D. Cal. Jan. 5, 2026); *Sekhon v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-1692-JDP, 2026 WL 74151 (E.D. Cal. Jan. 9, 2026). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Valencia Zapata*, 2025 WL 2741654, *6.

This court agrees with the bulk of other courts to have considered the issues presented here and holds that petitioner is likely to show that she has a liberty interest in her continued release. Where the government has found that petitioner is not a flight risk or a danger to the community and has released her pursuant to specific conditions, petitioner will likely succeed in showing that she has a liberty interest in continued release.

Immigration officials released petitioner on her own recognizance on April 29, 2024. ECF No. 1 ¶ 22. She has been allowed to live in the United States, subject to ICE supervision, but not detained, for over a year. During that time, petitioner has formed "enduring attachments of normal life" while living in the United States; she has taken adult English language classes, attended her local church, and had plans to move in with her fiancé in December 2025 and to marry in April 2026. *See Morrissey*, 408 U.S. at 482; ECF No. 1 ¶ 3. The court finds that petitioner's initial release and time out of custody likely created a constitutionally protected

liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released non-citizens to have strong liberty interests).

Once a court has found that a non-citizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the non-citizen before depriving her of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Here, petitioner has a significant private interest in her continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been released in the United States under the supervision of ICE for over a year prior to her re-detention. During that time, she applied for asylum and built a life with her fiancé. ECF No. 1 ¶ 3; 24. *See Salazar v. Casey*, No. 25-cv-2784-JLS (VET), 2025 WL 3063629, at *4 ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); *Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high. Petitioner was released on her own recognizance after her initial detention at the border. Prior to

4

releasing petitioner, immigration officers necessarily determined that she was neither a flight risk nor danger to the community. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). And in the intervening year, there has been no indication that she has become a flight risk or danger to the community. *See Salazar*, 2025 WL 3063629, at *4 (noting that there was no evidence that the petitioner presented a danger to the community or a flight risk). Absent a pre-detention hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G.*, 2025 WL 3254999, at *7 ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690)).

Respondents do not argue that petitioner is now a danger to public safety or a flight risk; they provide no explanation for her re-detention. *See* ECF No. 12. "Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-arrest; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty. *See id.*

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Indeed, respondents have provided no information about the additional burden that would fall on them as a result of being required to provide additional procedural safeguards.

After weighing the *Mathews* factors, the court finds that petitioner was entitled to notice and an opportunity to be heard before re-detention. The court grants the petition for a writ of

habeas corpus based on respondents' violation of petitioner's due process rights. *See De Vasquez*, WL 25539; *Sekhon*, 2026 WL 74151. The court orders that respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that she is a flight risk or danger to the community such that her detention is legally justified.

Accordingly, it is hereby ORDERED that:

1. The petition for writ of habeas corpus, ECF No. 1, is GRANTED.

2. Respondents are enjoined and restrained from re-detaining petitioner, absent exigent circumstances, without first providing petitioner with written notice and a pre-detention hearing before a neutral adjudicator. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and she shall be allowed to have counsel present.

3. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: ___February 3, 2026___    _____
                                 JEREMY D. PETERSON
                                 UNITED STATES MAGISTRATE JUDGE